UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHELE M. SLEIK, FRANK T. SLEIK III,
DEBRA K. FREY, AMY L. TRUCKEY,
MICHAEL R. TRUCKEY, and LELAND HILL,

        Plaintiffs,

        v.                                  Lead Case No.   22-C-1044
                                                    Member case:   22-C-1231

VILLAGE OF HOWARD and
VILLAGE BOARD OF VILLAGE OF HOWARD,

        Defendants.

---

## DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

---

These consolidated cases arise out of the Marley Street Project in the Village of Howard, for the improvement, construction, and installation of certain municipal services. Plaintiffs Michele M. Sleik and Frank T. Sleik III, Debra K. Frey, Amy L. and Michael R. Truckey, and Leland Hill brought two nearly identical actions in Brown County Circuit Court against the Village of Howard and the Village Board of Village of Howard, appealing the special assessments levied against their properties on Marley Street. Additionally, Plaintiffs alleged violations of the due process, equal protection, and takings clauses of the United States Constitution and the Wisconsin Constitution. Defendants removed each action pursuant to 28 U.S.C § 1443 and the court consolidated the cases. The court has jurisdiction over Plaintiffs' federal constitutional claims under 28 U.S.C. § 1331 and supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367. Before the court are the parties' cross-motions for summary judgment. For the following reasons, Plaintiffs' motion will be denied, Defendants' motion will be granted as to Plaintiffs' federal claims, and Plaintiffs' state law claims will be remanded to state court.

# BACKGORUND

Plaintiffs are all residents of Village of Howard, Wisconsin, owning properties on Marley Street. Defendant Village of Howard is a Wisconsin municipal corporation and Defendant Village Board of the Village of Howard is its governing body, comprised of a Village President and eight trustees. On November 12, 2018, the Village Board adopted Resolution No. 2018-29: Resolution Authorizing a Policy for Determining Special Assessments (the Policy Resolution), which established guidelines for the levying of special assessments and provided policy credits for corner lots, large undividable lots, and undevelopable lots. The Policy Resolution stated that property is benefited by the improvements described in the resolution, including the construction of sanitary sewers, watermains, storm sewers, service laterals, streets, sidewalks, and driveways.

On June 28, 2021, the Village Board adopted Resolution No. 2021-20: (the Preliminary Resolution), declaring its intent to exercise its police power to levy assessments under Wis. Stat. § 66.0701 for the construction and installation of sanitary sewer, storm sewer, water main, service laterals, sidewalks, curb and gutter, asphalt roadway, and storm water management facility upon Marley Street. On April 25, 2022, the Village sent a letter to Plaintiffs, notifying them that the Village Board would review and take action on the Marley Street assessments at an upcoming meeting. The correspondence included a Notice of Public Hearing, copies of calculation sheets and breakdown of assessment charges per parcel, and an unsigned draft of Resolution No. 2022-11 (the "Final Resolution"), authorizing the levying of special assessments against benefited properties. On May 23, 2022, the Village Board adopted the Final Resolution.

Plaintiffs Frank Sleik, Michael Truckey, and Leland Hill were all present at the Village Board meeting and had an opportunity to speak before the Final Resolution was adopted. On May 27, 2022, the Village Board published the Final Resolution in a local newspaper. On August 23,

2022, the Village sent letters to Plaintiffs, notifying them that special assessments had been levied against their properties and providing them invoices for those assessments.

The sanitary sewer and water main improvements on Marley Street were completed in May 2022, while the remaining improvements were completed in October 2022. As a result of the project, the infrastructure is in place such that property owners are now able to connect to the Village's sanitary sewer system, water main, and storm sewer system. Improvements to the roadway were made in order to accommodate an anticipated increase in traffic, due to industrial sites to the west of Marley and new commercial and residential developments that are likely to emerge on the east of Marley. Likewise, a bicycle lane and sidewalk were added as safety features to address some of the concerns resulting from the expansion of the road. Defendants claim that drainage on Plaintiffs' properties, which had been an issue in the past, also improved.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is genuine if a reasonable trier of fact could find in favor of the nonmoving party. *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 975 (7th Cir. 2000). A fact is material only if it might affect the outcome of the case under governing law. *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir. 1993). The ordinary standards remain unchanged on cross-motions for summary judgment: a court construes facts and inferences arising from them in favor of the party against whom the motion under consideration is made. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). When cross-motions for summary judgment are filed, "[i]n effect the judge is asked to decide the case as if there had been a bench trial in which the evidence was the depositions and other materials gathered in pretrial discovery." *Cook Inc. v. Boston Scientific Corp.*, 333 F.3d 737, 741 (7th Cir.

2003). "The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

**ANALYSIS**

**A. Ripeness**

Defendants argue that Plaintiffs' constitutional claims will be unripe until a state court makes a final decision on their appeal of the assessment because that "is the sole remedy of any person aggrieved by a determination of the governing body . . . involving . . . the levy of any special assessment." Wis. Stat. § 66.0703(12)(e). "The ripeness doctrine arises out of the Constitution's case-or-controversy requirement, as claims premised on uncertain or contingent events present justiciability problems." *Church of Our Lord & Savior Jesus Christ v. City of Markham, Ill.*, 913 F.3d 670, 676 (7th Cir. 2019) (citations omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or that may not occur at all." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016). However, "the settled rule is that exhaustion of state remedies is *not* a prerequisite to an action under [42 U.S.C.] § 1983." *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019) (internal quotation marks and citations omitted). Thus, Plaintiffs need not have their appeal of the assessment decided in a state court for their § 1983 claims to be ripe.

In the context of a regulatory taking claim, "a plaintiff's failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision." *Pakdel v. City & Cnty. of San Francisco, California*, 594 U.S. 474, 480 (2021). That is not the case here, however. The Village Board has made its final decision and the only other vehicle for Plaintiffs to obtain relief, other than this action, would be an appeal to

4

the circuit court as allowed under state law. Wis. Stat. §§ 66.0701(2), 66.0703(12). To hold that Plaintiffs' claim is unripe would, in effect, impose an exhaustion of state court remedies requirement for § 1983 claims. "Whatever policy virtues this doctrine might have, administrative 'exhaustion of state remedies' is not a prerequisite for a takings claim when the government has reached a conclusive position." *Pakdel*, 594 U.S. at 480 (quoting *Knick*, 588 U. S. at 185). It thus follows that Plaintiffs' constitutional claims are ripe.

### B. Fifth Amendment Takings

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V; *see also Chicago Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226, 239 (1897) (holding that the Takings Clause applies to the states). "A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick*, 588 U.S. at 185. There is substantial authority, however, for the proposition that a special assessment may not amount to an actionable takings claim under the Fifth Amendment because it is not a "taking" of property but, instead, an order to pay. *See Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1339 (Fed. Cir. 2001) (holding that "regulatory actions requiring the payment of money are not takings" based on the apparent consensus among four dissenting justices and one concurring justice in *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998)). Indeed, "'all circuits that have addressed the issue' of the precedential value of *Eastern Enterprises* 'have uniformly found that a taking does not occur when the statute in question imposes a monetary assessment that does not affect a specific interest in property.'" *Ballinger v. City of Oakland*, 24 F.4th 1287, 1295 (9th Cir. 2022), *cert. denied sub nom. Ballinger v. City of Oakland, California*, 142 S. Ct. 2777 (2022) (quoting *McCarthy v. City of Cleveland*, 626 F.2d 280, 285 (6th Cir. 2010) (collecting cases)) (holding that

5

an ordinance imposing a general obligation to pay does not effectuate an unconstitutional taking if it does not identify any specific fund of money).

Although the Seventh Circuit does not appear to have addressed the issue, I find the reasoning of these cases persuasive. As the Sixth Circuit concluded in *McCarthy* after its thorough analysis of the issue, "the Takings Clause 'is not an appropriate vehicle to challenge the power of [a legislature] to impose a mere monetary obligation without regard to an identifiable property interest.'" 626 F.3d at 286 (quoting *Swisher Int'l, Inc. v. Schafer*, 550 F.3d 1046, 1057 (11th Cir. 2008)). "Because the challenged ordinance does not seize or otherwise impair an identifiable fund of money," the court explained, "Plaintiffs have failed to plead a cause of action under the Takings Clause." *Id.*

The same reasoning applies here. It is undisputed that neither Plaintiffs' real property, nor a specific fund of money, was taken. The Village imposed an assessment, i.e., an obligation to pay money, for the improvements installed by the Village. Such an assessment does not constitute a taking within the meaning of the Constitution. Plaintiffs' takings claim under the Fifth Amendment will therefore be dismissed.

C. **Due Process**

Plaintiffs argue that their procedural due process rights were violated because Defendants failed to provide timely notice of the special assessments and failed to provide proper notice that the Village's authority to levy them was pursuant to local ordinance. "To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 604 (7th Cir. 2022), *cert. denied sub nom. Troogstad v. City of Chicago, Illinois*, 143 S. Ct. 734 (2023) (internal quotation marks and citation omitted).

"The hallmarks of procedural due process are notice and an opportunity to be heard." *Pugel v. Bd. of Trustees of Univ. of Illinois*, 378 F.3d 659, 662 (7th Cir. 2004). Federal courts use a balancing test to determine "what procedures *are* necessary to ensure that a citizen is not deprived of property without due process." *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 600 (7th Cir. 2009) (emphasis in original). "Not every deprivation of property requires the full arsenal of available procedural safeguards." *Id.* (citing *Dixon v. Love*, 431 U.S. 105, 115 (1977)).

Plaintiffs do not dispute that they had notice and an opportunity to be heard, since most of them attended and spoke at the Village Board meeting, when the Final Resolution was adopted. Nor do they dispute that under Wisconsin law, they have the right to appeal from any special assessment imposed by the Village by filing an action in the state circuit court. Wis. Stat. §§ 66.0701(2), 66.0703(12). Upon appeal, the court may affirm, annul, reduce or increase the assessment based on its findings. § 66.0703(12)(d). It is long established that this is all that is constitutionally required under the Fourteenth Amendment. *See King v. City of Portland*, 184 U.S. 61 (1902).

Plaintiffs argue that the Village violated their due process rights by failing to timely send them notice of the special assessments and by failing to cite to the specific Village ordinance under which it claims to have acted. But even if true, Plaintiffs' procedural due process claim fails because there are adequate post-deprivation remedies to satisfy due process. Indeed, Plaintiffs have appealed the assessments on their property based on the allegedly defective notice in the same complaint in which they included their federal claims under § 1983. Dkt. No. 1-1 ¶¶ 8, 9. This is precisely the kind of defect the statutory appeal process is intended to correct. *See Estate of Wolff v. Town Bd. of Town of Weston*, 156 Wis. 2d 588, 592, 457 N.W.2d 510, 511 (Ct. App. 1990)

7

(holding that notice of special assessment violated due process requirements). There is no reason to believe that the remedies available to Plaintiffs on appeal in state court are not adequate. As the court explained in *Veterans Legal Defense Fund v. Schwartz,*

> While a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist. The whole idea of a procedural due process claim is that the plaintiff is suing because the state failed to provide adequate remedies. Therefore, we do not require a plaintiff to pursue those remedies in order to challenge their adequacy, but likewise we do not allow a plaintiff to claim that she was denied due process just because she chose not to pursue remedies that were adequate. Given the availability of state remedies that have not been shown to be inadequate, plaintiffs have no procedural due process claim.

330 F.3d 937, 941 (7th Cir. 2003); *see also Simmons v. Gillespie*, 712 F.3d 1041, 1044 (7th Cir. 2013) ("The due process clause does not permit a litigant to disdain his opportunities under state law and then demand that the federal judiciary supply a remedy.").

Essentially the same analysis applies to Plaintiffs' substantive due process claim. Substantive due process is admittedly an "amorphous" concept and its scope is "very limited." *Bettendorf v. St. Croix Cnty.*, 631 F.3d 421, 426 (7th Cir. 2011) (internal quotes and citations omitted). "A government entity must have exercised its power without reasonable justification in a manner that 'shocks the conscience' in order for a plaintiff to recover on substantive due process grounds." *Id.* (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). No such claim is made here.

Plaintiffs substantive due process claim is little more than a claim that the special assessments imposed on their property are "in substantial excess of the minimal or nonexistent benefits" the improvements conferred. Pls.' Br. in Opp. at 12, Dkt. No. 42. But, again, this is precisely the kind of claim that the appeal process is intended to remedy. "When a plaintiff brings a substantive due process claim predicated on the deprivation of a state-created property interest,

8

she must show that the state violated some other substantive constitutional right or that state law remedies are inadequate." *Schwartz,* 330 F.3d at 941. Plaintiffs have not done so here. Their substantive due process claim therefore fails.

### D. Equal Protection

Plaintiffs argue that their rights to the equal protection of laws were violated because the assessments make them bear the cost for a project that benefits the entire community. The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any persons within its jurisdiction the equal protection of laws." U.S. CONST. amend. XIV, § 1. Although it generally protects members of vulnerable groups from unequal treatment attributable to the state, *see Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004), the Court has held that it is possible to have an equal protection claim on behalf of a "class of one" where there is no membership in a class or group. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*). Under this reading, the Equal Protection Clause also proscribes state action that irrationally singles out and targets an individual for discriminatory treatment as a so-called "class-of-one." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010); *Olech*, 528 U.S. at 564.

To establish a class-of-one claim, a plaintiff must show "that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (quotations omitted). "To be considered similarly situated, a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects." *Id.* (internal quotation marks and citation omitted). "As a general rule, whether individuals are similarly situated is a factual question for the jury." *McDonald v. Vill. of Winnetka*,

9

371 F.3d 992, 1002 (7th Cir. 2004).  However, summary judgment is appropriate "where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *Id.*

Plaintiffs argue that owning property on Marley Street, where the improvements were made, is irrelevant to the analysis.  Instead, they contend that the court should look at all members of the public who use the new project's infrastructure for similarly situated comparators.  For example, the court should consider that all members of the public who will use the improved road are similarly situated to Plaintiffs, and yet those road-users were not charged special assessments.  But this construction of the "similarly situated" requirement is too broad.  *See id.* ("It is clear that similarly situated individuals must be very similar indeed.").  Plaintiffs ignore many of the project's improvements that applied exclusively to them.  Only property owners on Marley Street can benefit from the installation of infrastructure that allows them to connect to the Village's sanitary sewer system, water main, and storm sewer system.  Similarly, drainage improvements affected their properties alone, not the properties of passing drivers.  Plaintiffs have not shown a good comparator and have thus failed to establish their class-of-one equal protection claim.

E. **Remaining State Law Claims**

What remains are Plaintiffs' special assessment appeal under state law and state constitutional claims.  When federal claims are dismissed, federal courts may decline to exercise supplemental jurisdiction over state law claims.  28 U.S.C. § 1367(c)(3); *see Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").  The Seventh Circuit has described a "sensible presumption that if the federal claims drop out *before trial*, the district court should relinquish jurisdiction over the state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007); *see also*

*Groce v. Eli Lilly & Co.*, 193 F.3d 496, 502 (7th Cir. 1999) (noting that the rule is dismissal unless state claims are frivolous or a "no brainer"). Because nothing suggests that the presumption should be ignored here, the court declines to exercise supplemental jurisdiction over the remaining claims.

Moreover, the law governing procedures after removal to federal court provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "Section 1447(c) itself calls for a district court to remand (rather than dismiss) cases in which it is without jurisdiction." *McIntyre v. Fallahay*, 766 F.2d 1078, 1082 (7th Cir. 1985). Accordingly, because these cases were removed to federal court and the court has declined to exercise supplemental jurisdiction over the remaining state law claims, Plaintiffs' state law claims will be remanded to Brown County Circuit Court.

## CONCLUSION

Accordingly, Plaintiffs' motion for summary judgment (Dkt. No. 33) is **DENIED** and Defendants' motion for summary judgment (Dkt. No. 23) is **GRANTED-IN-PART** as to all of Plaintiffs' claims under the U.S. Constitution. As to the remaining claims under state law, these consolidated cases are **REMANDED** to Brown County Circuit Court. Pursuant to 28 U.S.C. § 1447(c), a certified copy of this Order of Remand shall be mailed by the Clerk to the Clerk of the Circuit Court for Brown County.

**SO ORDERED** at Green Bay, Wisconsin this 13th day of August, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge